UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA M. DEARMOND,

    Plaintiff,

vs.                                                                          CIVIL NO.:  05-CV-74403-DT

COMMISSIONER OF                                           HON. GERALD E. ROSEN
SOCIAL SECURITY,                                            MAG. JUDGE WALLACE CAPEL, JR.

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for further fact finding consistent with this Report.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB].  Plaintiff filed for benefits on April 25, 2003,[1] alleging that she had been disabled and unable to work since January 20, 2002, due to "[s]troke affected vision (both eyes) and short term memory, history of optical migraines, panic attacks, anxiety."  (TR 27, 43-45, 62).  The Social Security Administration [SSA] denied benefits initially on August 6, 2003.  (TR 28-32).  A de novo hearing was held on June 29, 2004, before Administrative Law Judge [ALJ] Jan Donsbach.  (TR 188-209)  In a decision dated August 19, 2005, the ALJ found that Plaintiff could perform a range of light work.  (TR 14-22).   Accordingly, Plaintiff was found not

---

[1]Plaintiff signed her application April 10, 2003.  (TR 45).

1

disabled. (TR 22). On October 20, 2005, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (TR 4-6). Plaintiff then appealed to federal district court.

### A.     HEARING TESTIMONY

#### 1.     Plaintiff

Plaintiff testified that she last worked January 20, 2001 or 2002, when she had her stroke. (TR 191). She stated that it was most likely 2002 because that was her listed onset date. Id. She explained that the $37,500 she received in 2002 was in disability insurance. Id. In addition to her stroke, Plaintiff has vision problems and migraine headaches. (TR 192).

Plaintiff reported that when she has a migraine headache, she goes to bed and avoids light. (TR 192, 200). She puts a washcloth on her eyes and lies down all day, and sometimes into the next day. (TR 192). Even when her headache is not painful, she still has vision problems. Id. She stated that she has migraine headaches every day. Id. Headaches with pain occur a few times a week and "real severe" headaches occur a couple times per week. Id. A "real severe" headache lasts a day or more and she may take aspirin or Tylenol as advised by her doctor, but it usually does not help. (TR 192-93). She was also given Darvocet when she first left the hospital, but her physician recommended Tylenol after that because he did not want her to take too many medications. (TR 197). She was also on Plavix, a blood thinner, at that time, but her doctor recommended that she take two aspirins a day instead. (TR 198). She still takes Xanax and currently takes Zocor as well. Id. She previously took Paxil. Id. She has not taken any medication or injections specifically for her migraines. Id.

She reported that her license was revoked, and her doctor will not sign the form for her to test to get her license returned. (TR 192). In any event, she reported that she does not think she should have her license. Id. In addition, she reported that she "sleep[s] almost all day, every day." Id. She

clarified that her vision problems cause her blind spot to get bigger, and there is a "flickering light" that she cannot see through. (TR 193). She stated that she has vision disturbances every day, but she has "really bad" ones one to three times a week. Id. They last one to three days long, although in the past they have lasted an entire week. (TR 193-94). She testified that bright sunlight can trigger her migraines. (TR 193).

Plaintiff's attorney asked her to describe her blind spot. (TR 198). Plaintiff described her vision problems and clarified:

> I can see the light. It's like the kaleidoscope type thing. And it cuts off a certain - - my left field of vision. But I think it distorts what I see because sometimes I think I see more than I do . . . as I'm reading, the words disappear after I read. After I'm reading from the left to the right, the left disappears, so I have to usually follow with my finger. . . . [while watching television] I have to look back and forth. I can't see one thing completely at one time. Like when I look in the mirror, I only see half of my face. I'll see my right side, and that's it.

(TR 198-99). She added that she trips on things on the floor due to her blind spot. (TR 200-01). She has tripped on her stairs inside and fallen on the ice outside in the winter. (TR 201). She also walks into people. Id.

In addition, Plaintiff suffers from depression, anxiety, and panic attacks. (TR 194). Plaintiff described a panic attack:

> I get real uptight physically, and I feel like I can't breathe, and I feel like I've got to get out of the house. I have to get out into the fresh air. And I can't sit still, but I can't stand up and walk around. It's just a very uncomfortable feeling.

Id. She gets panic attacks if she does not use her CPAP machine when she naps and once every week. Id. However, some weeks she has one everyday. Id. Stress also brings on a panic attack. Id. She takes medication for her anxiety, depression, and panic attacks, and it helps most of the time, but she still finds herself crying for no reason. (TR 194-95).

Plaintiff stated that she can walk three blocks and stand for ten minutes before she gets uncomfortable. (TR 195). She stated that her ability to sit is dependent on where she sits. Id. She can recline "for awhile," but at other times, reclining bothers her back. Id. She has trouble sitting through an entire movie at a theatre and has to have two seats because she feels claustrophobic. Id. Sometimes at a movie, she has to get up and leave to walk around. Id. Additionally, she stated that her circulation in her legs is poor on one side. Id.

Plaintiff testified that she lives in a house with her husband and two daughters, ages eighteen and fifteen.[2] (TR 195-96). She stated that her husband works, and she spends her day primarily sleeping. (TR 196). She stated that she tries to do housework, but her daughters often help her. Id. She stated that she has trouble sorting things or putting them away and that she gets overwhelmed. Id.

Plaintiff's attorney asked her whether she has trouble focusing and concentrating, and also whether this affects her ability to do chores and accomplish things. (TR 199). Plaintiff testified

> I will start something, and then I'll think of the other thing that I have to do, and - - or I'll walk from one room to get something out of another room, and forget what I went there for, and start doing something totally different. And then that will take me to another room, and I'll start something else, and forget what I was doing in the first place. . . . one time I was cooking on the stove. And we have a refrigerator down in the basement, and I went down to get something out of the refrigerator. And I was trying to do laundry at the same time, and that buzzed. And so then I get distracted, and I go take care of the laundry. And then I had to think, now what did I come down her for? And then - - so I went back upstairs, forgot what I was getting in the refrigerator completely. And go back up, and everything's burned on the stove because I forgot that was on. I've left - - my daughters have to watch me because I've left the burners on underneath the food even after we've been done eating. I have to be careful with that because we have a gas stove.

---

[2] Her younger daughter attends school and the older daughter just graduated and will attend college in the fall. (TR 196).

(TR 199-200). She stated that things like this happen "[e]very day." (TR 200). In addition, she stated that she never finishes things. Id.

Since Plaintiff does not drive, she relies on her husband and daughters to help her get around. (TR 196). She stated that her dad also drives her places, but she doesn't ask him to help because he is elderly. Id. She stated that she does not sleep well during the night and will alternate between sleeping in bed, in a recliner, or on the living room floor. Id. She stated that she typically sleeps seven or eight hours per night. (TR 197). In terms of her daytime sleeping, she described the following schedule:

> I usually get up with my husband in the morning before he goes to work because I like to see him before he works. And so after he leaves I'll go back to bed and I'll sleep until probably 2:00 or 3:00. That would be probably 7:00 in the morning until 2:00 or 3:00. But then if he comes home and we end up sitting around watching TV, then I usually end up dozing off in the chair.

Id.

Plaintiff testified that she could not hold a full-time job due to the stress she experiences when she has to go somewhere. (TR 201-02).

### 2. Cherla Lynn Watkins

Cherla Lynn Watkins, Plaintiff's sister-in-law, testified that she sees Plaintiff on a weekly basis from an hour at a time to a half day. (TR 204). She stated that she has known Plaintiff for twenty-nine years. (TR 205). She stated that before her stroke Plaintiff was very happy to pass her pipe fitters test and be working, and Plaitniff was also active in her daughter's activities. Id. Following the stroke, Ms. Watkins testified that Plaintiff is "totally different" and unmotivated. (TR 205, 206, 207). She stated that she is unorganized and her eyesight is affected. (TR 205-06). In addition, she stated that Plaintiff has migraines, sleeps often, and is tired. (TR 206).

Ms. Watkins stated that she helps Plaintiff with housework and laundry. Id. She reported that Plaintiff is no longer active in church or with her daughter's activities. Id. She stated that when she comes over, Plaintiff is "very often" not dressed, does not have her hair done, or is not wearing make-up. Id. She stated that this is the case two to three times out of five, unless Plaintiff has plans to go out. (TR 206-07).

Ms. Watkins stated that Plaintiff is depressed and has trouble reading due to her vision as well as due to her headaches and nausea. (TR 207). She stated that she also notices that Plaintiff hesitates due to her vision problems. (TR 208). She also reported that Plaintiff has walked into walls when she is visiting. Id. She has also seen her knock things over when reaching for her medication. Id. She stated that she has seen this occur personally about four or five times. Id. She stated that Plaintiff is very apologetic for her problems Id. She also reported that Plaintiff lost her mobility in terms of driving. (TR 209).

### B. MEDICAL EVIDENCE

Examination of the parties' cross-motions for summary judgment and the ALJ's decision reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[3]

### C. VOCATIONAL EXPERT'S TESTIMONY

David A. Rinehart, a VE, testified at the hearing. (TR 202-03). He classified Plaintiff's past work as a steam fitter as heavy and skilled. (TR 202). The ALJ presented a hypothetical question to the VE regarding whether claimant could do light, simple work with "[a] visual limitation where we have no peripheral vision." Id. The VE testified that Plaintiff would not be capable of doing her past work. Id. However, he stated that she could do the following other light, unskilled jobs nationally:

---

[3]Subpart E, infra, at 7.

cleaner or housekeeper, 75,000 positions; assembler, small products II, 33,000 positions; and cashier II, 199,000 positions. (TR 202-03).

The ALJ asked a second hypothetical assuming the first with the additional "need to leave work early on an unscheduled basis due to migraine attacks three to four times a month." (TR 203). The VE stated that there was no work available under those restrictions. Id.

The ALJ's third hypothetical assumed the first hypothetical with "an inability to maintain concentration for two-hour segments." Id. The VE testified that no work was available with that additional restriction either. Id.

The ALJ asked a fourth hypothetical that assumed the first hypothetical as well as "the need to take two to three unscheduled breaks each day averaging about one half hour. In other words, because of these - - either the visual disturbances, the migraine attacks, or something of the sort where these things occur." Id. The VE stated that Plaintiff could not do her past relevant work under these restrictions, nor could she perform any other work. Id. Plaintiff's counsel declined to question the VE.

### D.     ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that the medical evidence establishes that the "[t]he claimant's status post stroke, left visual field deficit, migraine headaches, depression and anxiety are considered 'severe,'" but that she does not have an impairment as set forth in Appendix 1, Subpart P, Regulations No. 4. (TR 21). The ALJ found Plaintiff's testimony not fully credible. (TR 19-20, 21). She determined that Plaintiff had the RFC "to perform light exertion, simple work with lack of peripheral vision." (TR 21). Thus, the ALJ concluded that Plaintiff is not eligible for disability. (TR 22).

**E.     ANALYSIS**

Plaintiff advances several claims in her Motion for Summary Judgment. Plaintiff's Motion argues that the ALJ's decision is not supported by substantial record evidence because (1) the ALJ did not properly assess her RFC; (2) the ALJ improperly disregarded the consultative examiner's GAF score of 49; (3) there is not substantial evidence to reject the credibility of Plaintiff and Cherla Watkins; and  (4) the ALJ relied on hypotheticals with fewer restrictions than the record supports.[4] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[5]  The matter is now ready for decision.

**1.     Standard of Review**

This Court's review of the ALJ's conclusions is limited.  The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g) (2006). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a scintilla of evidence, but less than a preponderance of evidence.  Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).  This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).  Finally, consideration of the whole record does not mean that the ALJ must mention or

---

[4]Plaintiff's Motion for Summary Judgment and Brief filed February 21, 2006, (hereinafter "Plaintiff's Brief") at pages 7-11.

[5]Defendant's Motion for Summary Judgment and Brief filed March 13, 2006, (hereinafter "Defendant's Brief") at pages 5-11.

comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze each of Plaintiff's claim.

### a. RFC

Plaintiff argues that there is no medical evidence that disputes Dr. Garg and Dr. Cornblath's findings, which evidence disability "based on the severe visual, headache, fatigue, anxiety, and depression impairments" that resulted from Plaintiff's stroke.[6] Further, Plaintiff argues that Plaintiff testified and completed forms that indicate she has "visual field deficits, headaches requiring her to lay down, walking into walls, tripping, being unable to concentrate, having crying spells and anxiety attacks, and having to sleep on and off throughout the day," which is not compatible with light work.[7]

Defendant argues that Plaintiff fails to cite to the record regarding the aforementioned allegations.[8] Further, Defendant points out that Dr. Garg indicated that she had normal motor bulk, tone, and strength in January 2002, as well as a normal EEG and CT scan.[9] Further, Defendant argues that Dr. Cornblath indicated that her visual fields improved from April 2002 to August 2002, and that Dr. Garg reported that her reflexes and motor function were normal.[10] Further, Defendant points out that Dr. Garg recommended exercise twice daily.[11]

Plaintiff's citations to her own testimony and forms are related to her credibility, which the ALJ rejected, but is more fully discussed below. Essentially, Plaintiff's argument regarding her RFC

---

[6] Plaintiff's Brief at page 8.

[7] Plaintiff's Brief at pages 8-9.

[8] Defendant's Brief at page 7.

[9] Defendant's Brief at page 7 (citing TR 116, 138-39).

[10] Defendant's Brief at pages 7-8 (citing TR 94-95, 110, 113, 182).

[11] Defendant's Brief at page 8 (citing TR 182).

9

is an attack on the ALJ's failure to defer to her treating physicians, Dr. Garg and Dr. Cornblath.[12] This Court is well aware that the medical opinions and diagnoses of treating physicians are entitled to substantial deference, particularly if those opinions are uncontradicted. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

However, there is no evidence that the ALJ did not defer to the opinions of her doctors.[13] The ALJ only states that she does not give weight to the opinion of Dr. Hasan, a consulting psychiatrist, to the extent it is based on subjective complaints. (TR 17). Defendant is correct that Plaintiff fails to show how the ALJ did not properly examine her treating physicians' opinions. Plaintiff does not develop her argument regarding same and ""[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Thus, Plaintiff has failed to show error in the ALJ's assessment of her RFC.

### b. GAF

Plaintiff argues that the ALJ improperly rejected "the consultative psychiatric examiner's GAF score of 49 and his 'B' Criteria findings regarding daily activities" as subjectively based.[14] First, the ALJ did not necessarily err in disregarding the GAF in this case. "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.

---

[12]Plaintiff's Brief at page 8.

[13]Although Dr. Cornblath did state that Plaintiff was disabled due to her vision in April 2002 (TR 98-99), the ALJ neglected to mention same; however, in August 2002 Dr. Cornblath reported improvement, which the ALJ did note. (TR 17, 94).

[14]Plaintiff's Brief at page 9 (citing TR 19, 145-46, 161).

Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). Further, the ALJ did mention the GAF in this case, but nevertheless rejected same. (TR 19).

The second issue is whether the ALJ's rejection of the "B" criteria findings was proper. As Plaintiff points out, the psychiatric report is based on history and clinical observation.[15] Nonetheless, Defendant argues that Plaintiff does not have a disabling mental impairment because she said her antidepressant and anti-anxiety medication helped "most of the time," and she never treated with a mental health professional.[16] Further, Defendant points out that Dr. Kaul, a state agency psychiatrist "concluded that Plaintiff could understand, remember, and carry out simple instructions and was capable of performing unskilled work."[17] Plaintiff has failed to show any error. Although the ALJ rejected the "B" criteria findings, the consultative psychiatrist Ashok Kaul, MD, who reported same, found that Plaintiff was nevertheless capable of unskilled work. (TR 148, 150). Thus, any potential error left undeveloped by Plaintiff would be harmless.

### c.   Credibility

Plaintiff argues that the ALJ improperly found that both her and her sister-in-law, Cherla Watkins, were not fully credible.[18] Further, Plaintiff argues that the ALJ exceeded his role in discrediting her impairments relating to migraines because she does not take vasopressure

---

[15] Plaintiff's Brief at page 9 (citing TR 143-44).

[16] Defendant's Brief at page 8 (citing TR 142, 195).

[17] Defendant's Brief at page 8 (citing TR 146-50).

[18] Plaintiff's Brief at pages 9-10.

11

medication.[19]  Defendant argues that the ALJ's credibility determination is entitled to deference and supported by the record evidence.[20]

In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so then, 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.  McCoy on Behalf of McCoy v. Chater,  81 F.3d 44, 47 (6th Cir. 1995) (quoting  Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 117 (6th Cir. 1994) (citing Jones v. Sec'y of Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991) and quoting Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)).

In order to determine disability based on subjective complaints, we look to 20 CFR § 404.1529(c)(3) which lists the following factors:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 CFR § 404.1529(c)(3).  Social Security Ruling (SSR) 96-7p points out that the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make

---

[19] Plaintiff's Brief at page 10.

[20] Defendant's Brief at pages 9-10.

clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Policy Interpretation Rulings Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186, at *2.

The ALJ in this case stated the following:

> [t]he claimant's subjective complaints and alleged limitations are not consistent with the treatment she receives. There is no evidence of treatment with migraine prophylactic medications, such as Inderal or Verapamil, biofeedback, avoidance of identifiable trigger factors through keeping a diary and lifestyle changes, etc. There is nothing in the treatment records to indicate that the claimant cannot take Darvocet because she was on "too much medication," as she claimed at the hearing. There is no evidence the claimant has received visual rehabilitation. There is no evidence that the claimant's CPAP machine is ineffective and no doctor has recommended surgery for the claimant's sleep apnea. The claimant is only given medications for her subjective mental complaints with no formal work-up and treatment by a mental health professional. It is reasonable to assume that if the claimant were experiencing the disabling problems alleged, she would have received more aggressive treatment and she would seek treatment by a mental health professional.
> Finally, I have considered the testimony of the claimant's sister-in-law but I do not find additional limitations based on her testimony because it is not supported by the objective findings and it is inconsistent with the claimant's treatment.

(TR 19-20). The regulations clearly set forth that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 CFR § 404.1529(c)(2).

It appears that the ALJ did just that. The sole factor under 20 CFR § 404.1529(c)(3) that the ALJ partially discussed was that of "[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms." However, the ALJ simply noted a lack of "more aggressive treatment." The undersigned recommends that the court find that this is insufficient.

Further, the "ALJ should not substitute his own observations for professional medical opinion of record." Harris v. Heckler, 756 F.2d 431, 439 (6th Cir. 1985) (citation omitted). Thus, Plaintiff is

correct in asserting that the ALJ exceeded his role.[21] Specifically, the ALJ's observations that "[t]here is no evidence of treatment with migraine prophylactic medications, such as Inderal or Verapamil, biofeedback, avoidance of identifiable trigger factors through keeping a diary and lifestyle changes, etc." are beyond the scope of his duties. (TR 19). The ALJ does not cite to a physician's opinion regarding the necessity for such treatment. It is true that Dr. Cornblath suggested that such prophylatics be reviewed with Dr. Garg (TR 94, 99), this does not translate to a lack of credibility on Plaintiff's behalf.

> The undersigned recognizes that
>
> after listening to what [Plaintiff] said on the witness stand, observing [her] demeanor, and evaluating that testimony in the light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [Plaintiff] was trying to make [her] symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment.

Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987). Further, [t]he "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference. . . ." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). Nonetheless, the ALJ may not simply reject credibility based on a lack of medical records and must comply with 20 CFR § 404.1529(c)(3). The ALJ failed to do so.[22]

### d. Hypotheticals

Plaintiff also argues that the hypothetical adopted by the ALJ is wholly inadequate because it fails to describe Plaintiff impairments "in all significant aspects," as dictated by Felisky v. Bowen, 35

---

[21] Plaintiff's Brief at page 10.

[22] Further, the ALJ superficially rejected Plaintiff's sister-in-law's testimony. (TR 20). As the undersigned suggests that the matter be remanded in regard to the Plaintiff's credibility, it is also suggested that the ALJ review the credibility determination relating to the sister-in-law as well. The superficial rejection of same leaves no room for meaningful appellate review.

14

F.3d 1027 (6th Cir. 1994).[23]  Specifically, Plaintiff points out that "[t]here is no restriction noted regarding the other visual disturbances, the migraines, the fatigue, the effect of the visual disturbance and stroke on walking, her anxiety, or her depression."[24]  The ALJ did find that "[t]he claimant's status post stroke, left visual field deficit, migraine headaches, depression and anxiety are considered 'severe.'" (TR 21).  However, he only accepted and relied upon the VE's testimony in response to his first hypothetical, in which he assumed a " visual limitation where we have no peripheral vision." (TR 20-22, 202).  The ALJ rejected hypotheticals assuming migraine headaches, concentration difficulties, and a need for unscheduled breaks. (TR 20-22, 203).

Plaintiff alleges that hypotheticals two,[25] three,[26] and four[27] are supported by substantial evidence and the VE testified that the limitations under those hypotheticals would eliminate any work that Plaintiff could perform.[28]  Defendant argues that Plaintiff fails to cite supporting medical or other record evidence to support her argument regarding hypotheticals two, three, and four.[29]

Recently, the Sixth Circuit has clarified what a hypothetical should include:

> In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. Foster, 279 F.3d at 356. In Varley v. Sec'y of Health

---

[23] Plaintiff's Brief at page 10.

[24] Id.

[25] Hypothetical two assumed a "need to leave work early on an unscheduled basis due to migraine attacks three to four times a month." (TR 203).

[26] Hypothetical three assumed "an inability to maintain concentration for two-hour segments." (TR 203).

[27] Hypothetical four assumed "the need to take two to three unscheduled breaks each day averaging about one half hour." (TR 203).

[28] Plaintiff's Brief at page 11.

[29] Defendant's Brief at page 10.

>and Human Servs., 820 F.2d 777 (6th Cir. 1987), a case cited in Howard, we likewise determined that a vocational expert need only "take[ ] into account plaintiff's limitations." Varley, 820 F.2d at 780.

Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted).

>As in Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987),
>
>>[t]he vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions.

See also Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 118-19 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals" (citation omitted)).

However, because the ALJ's credibility determination is flawed, it is impossible to assess whether the hypothetical responses were properly dismissed based on a lack of credibility. Thus, remand is necessary.

### 2.     Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under 42 U.S.C. § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes

a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The ALJ did not properly assess credibility pursuant to 20 CFR § 404.1529(c)(3). Further, the ALJ substituted her own opinion in place of the physicians' in assessing Plaintiff's credibility. Additionally, because the ALJ rejected Plaintiff's subjective complaints, she also rejected responses to hypotheticals that in part assumed the same subjective complaints. Thus, remand to allow the ALJ to properly assess credibility pursuant to the Regulations is necessary, but a remand for benefits in this instance would be premature.

### III.   CONCLUSION

For the reasons stated, I respectfully recommend that the court **GRANT** Plaintiff's Motion for Summary Judgment **IN PART**, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case to the Defendant Commissioner for further fact finding consistent with this Report.

Pursuant to Rule 72(b) of the Fed. R. Civ. P. and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of this recommendation they may serve and file specific, written objections to the proposed findings and recommendations. Either party may respond to another party's objections within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed. R. Civ. P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

                                      <u>s/Wallace Capel, Jr.</u>
                                      **WALLACE CAPEL, JR.**
                                      **UNITED STATES MAGISTRATE JUDGE**

**Dated:** <u>  October 30, 2006  </u>

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Janet L. Parker and Richard M. Amsbaugh,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

        s/James P. Peltier
        United States District Court
        Flint, Michigan 48502
        810-341-7850
        E-mail: pete_peltier@mied.uscourts.gov